UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ) <br> UPPI, LLC, ) <br>   ) <br> Plaintiff-Relator, ) <br>   ) <br> v. ) <br>   ) <br>   ) <br> CARDINAL HEALTH, INC.; ) <br> CARDINAL HEALTH 414, LLC d/b/a ) <br> CARDINAL HEALTH NUCLEAR ) <br> PHARMACY SERVICES; CARDINAL ) <br> HEALTH 200, LLC; D'S VENTURES ) <br> LLC d/b/a LOGMET SOLUTIONS, LLC; ) <br> CARING HANDS HEALTH EQUIPMENT ) <br> & SUPPLIES, LLC; OTHER UNNAMED ) <br> SMALL BUSINESS FRONT ) <br> COMPANIES, OBIE B. BACON, and ) <br> DEMAURICE SCOTT, and UNNAMED ) <br> INDIVIDUALS (DOES), ) <br>   ) <br> Defendants. ) <br> _____ ) | Case No.: 9:22-cv-03770-BHH <br><br> **ORDER** |

This matter is before the Court on a motion to dismiss filed by Defendants Cardinal Health, Inc., Cardinal Health 414, LLC d/b/a Cardinal Health Nuclear Pharmacy Services, and Cardinal Health 200, LLC (collectively, "Cardinal Health"). (ECF Nos. 59, 60, and 127.) The motion has been fully briefed, and the Court heard oral arguments on June 9, 2023. For the reasons set forth on the record and detailed below, the Court denies the motion.

**BACKGROUND**

On November 14, 2017, Plaintiff-Relator UPPI, LLC ("UPPI") filed a sealed complaint in the United States District Court for the Eastern District of Washington ("the

1

Washington Court"). (ECF No. 1.) The complaint alleges violations of the False Claims Act, 31 U.S.C. § 3729, ("FCA") against Defendants Cardinal Health, D's Ventures LLC d/b/a Logmet Solutions, LLC ("Logmet"), DeMaurice Scott,[1] Caring Hands Health Equipment & Supplies, LLC ("Caring Hands"), and Obie B. Bacon.[2] (*Id.*) The Government investigated UPPI's allegations, obtained several extensions of the seal period, and filed a notice of election to decline to intervene on May 6, 2020. (ECF No. 30.) The following day, the Washington Court issued an Order unsealing the complaint and directing that it be served upon Defendants. (ECF No. 31.)

On August 24, 2020, UPPI filed an amended complaint, naming the same Defendants but removing several causes of action. (ECF No. 37.) The amended complaint centers around what UPPI describes as a "rent-a-vet" scheme involving the sale of radiopharmaceutical products to the Government. (*Id.* ¶ 5.) UPPI alleges:

> Radiopharmaceutical products are radioactive materials used to treat medical conditions, diagnose pathology, and visualize and measure physiological functions. The Government buys these products through a competitive contracting process. Although the ordinary rule is that contracts go to the most competitive bidder, the Government gives preferential treatment to small businesses—and even more preferential treatment to certain types of small businesses. For example, woman-owned small businesses and minority-owned small businesses receive more favorable treatment than small business generally. And for VA contracts especially, small businesses owned by service-disabled veterans (called "Service Disabled Veteran Owned Small Businesses" or "SDVOSBs" in contracting lingo) receive the most preferential treatment of all.

(*Id.* at ¶ 2.) "As a general rule, an SDVOSB that is awarded a set-aside contract of a certain size must perform at least 50% of the work on that contract." (*Id.* at ¶ 36.)

---

[1] Defendant Scott is the CEO and owner of Defendant Logmet. (*Id.* at 12.)

[2] Defendant Bacon is the CEO and owner of Defendant Caring Hands. (*Id.* at 11.)

Alternatively, for contracts awarded after June 30, 2016, an "SDVOSB may not pay more than 50% of the amount paid to it by the Government to a subcontractor that is not similarly situated, *i.e.*, not also an SDVOSB." (*Id.* (citing 13 C.F.R. § 125.6).)

Both Caring Hands and Logmet are SDVOSBs. (*Id.* at ¶¶ 15-18.) UPPI alleges that Defendants Caring Hands, Logmet, and their owners (collectively, "the SDVOSB Defendants") did not have licenses or expertise to work with radiopharmaceutical products, could not perform most of the work required under the contracts, and instead "acted as front companies for Cardinal [Health], a massive, publicly traded company that was prohibited from using small-business preferences." (*Id.* at ¶¶ 6, 50; *see also id.* at ¶ 162 (alleging that Cardinal Health is "a large business with every advantage in the marketplace").) Specifically, UPPI alleges that "the SDVOSB Defendants used their preferred status to bid on and obtain contracts to supply radiopharmaceutical products to the Government, knowing all the while that Cardinal Health would do the vast majority of the work and receive almost all the revenue under the contract." (*Id.* at ¶ 6.)

Defendants filed motions to dismiss.[3] (ECF Nos. 58-61.) Cardinal Health raised four issues in its motion: **(1)** falsity; **(2)** causation; **(3)** scienter; and **(4)** materiality. (ECF No. 59 at 26-51.) UPPI filed a consolidated response in opposition, and Cardinal Health filed a reply. (ECF Nos. 66, 73.) Additionally, the Government filed a statement of interest in response to Defendants' motions, stating that dismissal was inappropriate because "Relator's Amended Complaint adequately pleads violation of the False Claims Act with

---

[3] During the hearing on June 9, 2023, counsel informed the Court that UPPI's claims against the SDVOSB Defendants have been settled. The Court stayed the SDVOSB Defendants' motions to dismiss for thirty days to allow the Government to review and approve the settlement agreements. Accordingly, this order addresses only the issues raised in Cardinal Health's motion to dismiss.

3

the requisite particularity pursuant to Fed. R. Civ. P. 9(b) and Fed. R. Civ. P. 12(b)(6)." (ECF No. 67 at 2.)

On September 29, 2021, the Washington Court granted Defendants' motions to dismiss, finding that UPPI failed to adequately plead the elements of falsity and materiality with respect to Counts I and II. (ECF No. 75 at 15-22.) Additionally, the Washington Court dismissed Defendants' FCA conspiracy claim (Count III) because there was no "viable underlying presentment or false statement claim." (*Id.* at 23.) The Washington Court did not address Cardinal Health's causation or scienter arguments.

UPPI appealed to the Ninth Circuit Court of Appeals. (ECF Nos. 77-78.) In addition to addressing the Washington Court's falsity and materiality holdings, Cardinal Health raised two alternative grounds: **(1)** that UPPI failed to plead that Cardinal Health caused the submission of false claims; and **(2)** that UPPI failed to plead scienter. On August 9, 2022, the Ninth Circuit heard oral arguments. Two weeks later, the Ninth Circuit, in an unpublished memorandum order, reversed the Washington Court's dismissal, finding that the amended complaint "adequately pleads falsity and materiality to survive Rule 12(b)(6) dismissal." *UPPI LLC v. Cardinal Health, Inc.*, No. 21-35905, 2022 WL 3594081, at *4 (9th Cir. Aug. 23, 2022). The Ninth Circuit remanded the case with directions for the Washington Court to address the alternative grounds that Defendants presented on appeal. *Id.*

On September 15, 2022, Defendants collectively moved to transfer this case to the District of South Carolina, and UPPI consented and requested that the case be transferred to the Beaufort Division. (ECF Nos. 85, 86.) Accordingly, on October 31, 2022, the

4

Washington Court transferred the case to the Beaufort Division of the District of South Carolina. (ECF No. 87.)

This Court held a status conference on January 10, 2023, and directed the parties to file supplemental briefing on the issues that were not addressed by the Ninth Circuit. (ECF No. 120.) The parties thereafter filed supplemental briefing, and the Court heard oral arguments on June 9, 2023. (ECF Nos. 125-30, 140.) At the conclusion of the hearing, the Court took the matter under advisement, requesting that UPPI submit a proposed order and providing Cardinal Health the opportunity to respond. After consideration of the record and the parties' submissions, the Court rules as follows.

## **LEGAL STANDARD**

In reviewing a Rule 12(b)(6) motion to dismiss, the Court "must accept as true all of the [Plaintiff's] allegations and must construe factual allegations in the light most favorable to the plaintiff." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). A complaint survives a motion to dismiss "if it 'state[s] a claim to relief that is plausible on its face,' meaning that it pleads sufficient facts to support a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *United States ex rel. Grant v. United Airlines, Inc.*, 912 F.3d 190, 196 (4th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Fraud-based claims—including the FCA claims at issue in this case—must also satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*

5

The particularity requirement applies to the presentment element of an FCA claim. *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 194 (4th Cir. 2022). There are two ways to plead presentment with particularity. *Id.* First, a relator can allege "a representative example describing 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Id.* (quoting *Grant*, 912 F.3d at 197). Alternatively, a relator "can allege a pattern of conduct that would '*necessarily* have led[] to submission of false claims' to the government for payment." *Grant*, 912 F.3d at 197 (quoting *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 457 (4th Cir. 2013)).

The Fourth Circuit requires particularity "to prevent frivolous suits, stop fraud actions where everything is learned after discovery (i.e., fishing expeditions, and to protect defendants' reputations." *Nicholson*, 42 F.4th at 195. Nevertheless, "'[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts.'" *Id.* (quoting *Harrison*, 176 F.3d at 784).

## **DISCUSSION**

Cardinal Health argues that there are four issues now before the Court: **(1)** whether UPPI pled viable claims as to contracts without subcontracting limitations; **(2)** causation; **(3)** scienter; and **(4)** the sufficiency of the FCA Conspiracy claim. UPPI, however, contends that only the final three issues are properly before the Court. The Court will address these issues in turn.

### I. Falsity as to Individual Contracts

First, Cardinal Health argues that UPPI failed to plead falsity as to contracts that did not contain a subcontracting limitation prohibiting the SDVOSB Defendants from supplying products obtained from a large business ("the subcontracting limitation").[4] (ECF No. 127 at 9-12; *see also* ECF No. 59 at 26-27.) Cardinal Health contends that "for most of the contracts awarded to Caring Hands and Logmet, that [subcontracting] limitation either did not apply in the first place or was waived by the government, fatally undercutting Relator's allegations." (ECF No. 127 at 10.) In response, UPPI contends that Cardinal Health's argument is barred by the law of the case doctrine because the Ninth Circuit held that the amended complaint sufficiently pleads falsity. In the alternative, UPPI argues that "the subcontracting limitation does not limit the scope of UPPI's claims at the pleading stage." (ECF No. 128 at 13.)

After reviewing the parties' arguments and the Ninth Circuit's opinion, the Court finds that Cardinal Health's argument is barred by the law of the case doctrine.

"Under the law of the case doctrine, 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Columbus-America Discovery Group v. Atl. Mut. Ins. Co.*, 203 F.3d 291, 304 (4th Cir. 2000) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).

> [O]nce the decision of an appellate court establishes the law of the case, it must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal . . . unless: (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a

---

[4] The subcontracting limitation is referred to as the "nonmanufacturer rule" by the parties. (*See* ECF Nos. 66 at 21, 127 at 10.) It provides "that a non-manufacturing small business may source products from other small businesses." (ECF No. 36 at ¶ 37.)

7

> contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice.

*United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999) (alteration in original) (internal quotation marks omitted). Moreover, the "law of the case" doctrine applies when a case is transferred from one district court to another. *McMasters v. United States*, 260 F.3d 814, 818 (7th Cir. 2001); *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) ("[T]he doctrine applies as much to the decisions of a coordinate court in the same case as to a court's own decisions.").

Here, Cardinal Health raised the subcontracting limitation issue in support of its falsity argument in both the Washington Court and the Ninth Circuit. (ECF No. 59 at 26–27; *UPPI LLC*, No. 21-35905, ECF No. 23 at 31–32 (Br. of Appellee Cardinal Health).) The Washington Court found the issue irrelevant "because contractual requirements have no bearing on the truthfulness of Defendants' statements or representations." (ECF No. 75 at 19.) The Ninth Circuit ultimately rejected that finding and held:

> Here, if the SDVOSBs agreed to comply with the subcontracting limitations but had no intent to do so, as the [Amended Complaint] alleges, the falsity element is met under a promissory fraud theory. Any dispute over the meaning of contractual terms is a question inappropriate for resolution at the motion to dismiss stage.

*UPPI LLC*, 2022 WL 3594081, at *2. As a practical matter, the Ninth Circuit's holding effectively established that UPPI sufficiently pled falsity, regardless of whether specific contracts contained the subcontracting limitation, and this Court will not disturb that finding *at the pleading stage*.[5]

---

[5] Of course, Cardinal Health may litigate its contract-by-contract falsity arguments after discovery. As the Fourth Circuit recently held, the law of the case doctrine "poses no bar to the assessment of past holdings based on a different procedural posture when, as is the case in the progression from review of a motion to dismiss to a motion for summary

8

## II.   Causation

Second, Cardinal Health argues that "the Amended Complaint is devoid of factual allegations to demonstrate that Cardinal Health *caused* the SDVOSBs to make false statements and present false claims." (ECF No. 127 at 12.) Cardinal Health asserts that it had no contractual liability to the VA and was merely "part of the supply chain," and thus that it could not have caused the SDVOSB Defendants to submit false claims. (*Id.* at 16.) However, accepting the allegations contained in the amended complaint as true, the Court finds that UPPI has sufficiently alleged causation.

The Fourth Circuit has not determined the standard governing FCA causation; however, Cardinal Health argues that the FCA requires both but-for and proximate cause, relying on case law from the Tenth Circuit and the D.C. Circuit Court of Appeals, as well as Fourth Circuit precedent involving third-party defendants where the court held that a relator must allege conduct by the defendant "that would necessarily have led to a false claim being submitted" in order to state a claim." (*See id.* at 12-13.) *United States ex rel. Grant v. United Airlines, Inc.*, 912 F.3d 190, 197 (4th Cir. 2018).

UPPI, on the other hand, argues that only proximate cause is required, relying on a recent unpublished opinion by Judge Richard Gergel of the District of South Carolina. *United States ex rel. Lutz v. Lab. Corp. of Am. Holdings*, No. 9:14-3699-RMG, 2021 WL 2457693, at *3 (D.S.C. June 16, 2021). In *Lutz*, Judge Gergel held that "[t]he phrase 'causes' is not defined by the [FCA]; it is interpreted to reflect ordinary tort principles of proximate causation." *Id.* (collecting cases). Judge Gergel further held that "'[u]nder

---

judgment, that later review expands the court's inquiry based on development of actual facts underlying a plaintiff's claims." *Graves v. Lioi*, 930 F.3d 307, 318 (4th Cir. 2019).

federal law an act will be deemed a proximate cause of a result if the act is a substantial factor in the sequence of responsible causation, and if the [result] is reasonably foreseeable or anticipated as a natural consequence.'" *Id*. (alteration in original) (quoting *United States ex rel. Wuestenhoefer v. Jefferson*, 105 F. Supp. 3d 641, 681 (N.D. Miss. 2015)).

After review, the Court agrees with Judge Gergel's well-reasoned analysis and holds that a relator in an FCA case "must show an 'affirmative act' going beyond 'mere passive acquiescence.'" *Id.* (quoting *Wuestenhoefer*, 105 F. Supp. 3d at 681). "This requirement strikes the appropriate balance between shielding from liability parties who merely fail to prevent the fraudulent acts of others, and ensuring that liability attaches for affirmative acts that do cause or assist the presentation of a fraudulent claim." *Wuestenhoefer*, 105 F. Supp. 3d at 681 (internal quotation marks omitted). In evaluating the sufficiency of UPPI's allegations, the Court notes that proximate cause is "a flexible concept" that "is often explicated in terms of foreseeability or the scope of the risk created by the predicate conduct." *Paroline v. United States*, 572 U.S. 434, 444-45 (2014). Consistent with this principle, the Court concludes that it is sufficient to allege that the defendant's conduct was at least "a substantial factor" in causing the submission of false claims. *See Lutz*, 2021 WL 2457693, at *3.

Accepting the allegations in the amended complaint as true, the Court holds that UPPI sufficiently alleges that Cardinal Health proximately caused submission of the SDVOSB Defendants' false claims. For example, the amended complaint alleges that Cardinal Health encouraged the SDVOSB Defendants to bid on radiopharmaceutical contracts, consulted on the bids, supplied the products to the Government, and received most of the financial benefit. (ECF No. 36 at ¶¶ 6, 52-54.) UPPI also alleges that Cardinal

Health engaged in a fraudulent scheme to unlawfully access contracts it would have lost to bona fide small businesses. (*Id.* at ¶¶ 6, 52–54, 156–57; *see also id.* at ¶ 142 (alleging that Defendants' "intended outcome" was to fraudulently induce the Government to contract with the SDVOSB Defendants.)

For the foregoing reasons, the Court concludes that the amended complaint sufficiently alleges that Cardinal Health proximately caused the submission of false claims.[6]

## III.   Scienter

Next, Cardinal Health contends that the amended complaint "fails to plead that Cardinal Health *knowingly* caused the SDVOSBs to make false statements or present false claims." (ECF No. 127 at 16). Specifically, Cardinal Health argues that UPPI's "allegations that Cardinal Health knowingly caused the SDVOSBs to present false claims or make false statements material to a false claim are either nonexistent or entirely conclusory." *Id.* at 17.

The FCA defines "knowingly" to mean that a person: "**(i)** has actual knowledge of the information; **(ii)** acts in deliberate ignorance of the truth or falsity of the information; or **(iii)** acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1). The FCA does not require "proof of specific intent to defraud." *Id.* While Rule 9(b)'s heightened pleading standard generally applies to FCA claims, relators do not have to allege knowledge or "other conditions of a person's mind" with particularity. Fed. R.

---

[6] While the Court is persuaded that a relator need only allege proximate cause, the Court also finds that UPPI's allegations would be sufficient under a "but for" causation standard. (*See* ¶¶ 51, 82–90 (alleging that the SDVOSB Defendants lacked the ability to successfully bid on, or perform, the contracts); *see also id.* at ¶ 106 (alleging that the SDVOSB Defendants would not have been able to bid on contracts they could not perform without Cardinal Health's technical assistance and pricing information).)

11

Civ. P. 9(b). Instead, those matters "may be alleged generally." *Id.* Therefore, a relator must only allege "that the defendant had *knowledge* of the illegality of its actions, rather than *specific intent* to defraud." *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 912 F.3d 731, 735 (4th Cir. 2019). Even so, the FCA's scienter requirements are "rigorous" and must be "strict[ly] enforce[d]." *Universal Heath Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 192 (2016). To adequately plead knowledge, a relator "still 'must set forth specific facts that support an inference of fraud." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (citation omitted).

Here, the amended complaint alleges that Cardinal Health knew that the SDVOSB Defendants were making false representations and submitting false claims to the Government. (*See* ECF No. 36 at ¶¶ 147-57.) The amended complaint describes the demanding VA requirements for radiopharmaceutical contracts and the complexity of the contracts and products to be supplied under them. (*Id.* at ¶¶ 49, 51, 69-78.) Moreover, the amended complaint alleges that Cardinal Health knew that the SDVOSB Defendants were too small and lacked the facilities, equipment, and licensing to provide the services that they contractually promised to the Government. (*Id.* at ¶¶ 50, 82-90, 147-57; *see also id.* at ¶ 51 ("Cardinal's support was therefore essential to preparing the SDVOSB Defendants' false and fraudulent bids.").) Once the SDVOSB Defendants were awarded contracts, Cardinal Health supplied the drugs to the Government and billed the SDVOSB Defendants slightly less than the SDVOSB Defendants had billed the Government. (*Id.* ¶¶ 101, 148.) Cardinal Health then received most of the revenue from the contracts. (*Id.* ¶¶ 6, 52, 59, 62.)

Accepting the allegations contained in the amended complaint as true, UPPI has sufficiently alleged facts to assert that Cardinal Health was aware of the illegality of its actions. Moreover, the amended complaint does not allege conduct involving "honest mistakes or incorrect claims submitted through mere negligence." *United States ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*, 612 F.3d 724, 728 (4th Cir. 2010) (quoting *United States ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1073 (9th Cir. 1998)). Rather, UPPI alleges that Cardinal Health knowingly "used the SDVOSB Defendants to avoid competition for Government contracts."[7] (ECF No. 36 at ¶¶ 144,156.)

## IV. False Claims Act Conspiracy Claim (Count III)

Finally, Cardinal Health argues that the Court should dismiss Count III because "[t]he Amended Complaint does not plausibly allege a conspiracy in violation of the False Claims Act." (ECF No. 127 at 19). Specifically, Cardinal Health argues that the FCA Conspiracy claim fails because the amended complaint does not plead an unlawful agreement to defraud the Government or any acts in furtherance of such an agreement. (*Id.* at 20). The Court disagrees.

"To prove an FCA conspiracy, a relator must show (1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim reimbursed by the

---

[7] The parties disagree about the relevance of Cardinal Health's sophistication in the radiopharmaceutical industry and experience with Government contracting. While the Court agrees that the sophistication of a defendant in a relevant market—standing alone—is generally insufficient to allege the requisite scienter under the FCA, the amended complaint does not rely solely on Cardinal Health's sophistication or experience. Moreover, the Court recognizes that deliberate ignorance or reckless disregard are both sufficient to establish knowledge under the FCA. *See* 31 U.S.C. § 3729(b)(1); *see United States v. Rachel*, 289 F. Supp. 2d 688, 695 (D. Md. 2003) (holding that a defendant cannot bury its "head in the sand" and "fail[] to make simple inquiries which would alert [it] that false claims were being submitted" (quoting S. Rep. 99-345, at 21 (1986))).

government and (2) at least one act performed in furtherance of that agreement." *United States ex rel. DeCesare v. Americare in Home Nursing*, 757 F. Supp. 2d 573, 584 (E.D. Va. 2010). "Where the conduct that the conspirators are alleged to have agreed upon involved the making of a false record or statement, it must be shown that the conspirators had the purpose of 'getting' the false record or statement to bring about the Government's payment of a false or fraudulent claim." *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 672-73 (2008). However, "[i]t is not necessary to show that the conspirators intended the false record or statement to be presented directly to the Government, but it must be established that they agreed that the false record or statement would have a material effect on the Government's decision to pay the false or fraudulent claim." *Id.* at 673.

      Here, the amended complaint alleges that Defendants knowingly agreed to perpetrate an unlawful scheme, under which the SDVOSB Defendants would act as fronts for Cardinal Health and use their preferred status to win contracts for Cardinal Health's benefit, thus allowing Cardinal Health to avoid fair competition. (ECF No. 36 at ¶¶ 6-7, 51-52, 93-94, 105-07, 113.) The amended complaint also alleges that Cardinal Health knew that the SDVOSB Defendants were not eligible for, and could not perform, these contracts, and that Defendants knowingly collaborated to ensure that the SDVOSB Defendants could win and keep them anyway. (*Id.* at ¶¶ 107, 144-50.)  Thus, the amended complaint details an "arrangement" wherein Cardinal Health would "service the Government's pharmacies once the contracts were awarded" and the SDVOSB Defendants would "only handle the invoicing, as opposed to the actual work." (*Id.* at ¶¶ 93-94.)

Accepting the allegations contained in the amended complaint as true, the Court finds that UPPI has sufficiently alleged the existence of an unlawful agreement between the Defendants to get false claims paid by the Government and numerous overt acts performed in furtherance of that agreement. (*See id.* at ¶¶ 6-7, 51-52, 93-94, 105-07, 113.)

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Cardinal Health's motion to dismiss (ECF Nos. 59, 60, 127).

**IT IS SO ORDERED.**

s/ Bruce H. Hendricks
United States District Judge

August 14, 2023
Charleston, South Carolina

15