IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| United States of America, *ex. rel.* ) <br> UPPI, LLC, ) <br> ) <br> Plaintiff-Relator, ) <br> ) <br> v. ) <br> ) <br> Cardinal Health, Inc. *et al.*, ) <br> ) <br> Defendants. ) <br> _____ ) | Civil Action No. 9:22-cv-3770-BHH <br><br><br><br> **ORDER** |

   This matter is before the undersigned United States Magistrate Judge upon a Motion to Compel (Dkt. No. 204) filed by Defendants Cardinal Health, Inc.; Cardinal Health 414, LLC; and Cardinal Health 200 LLC (collectively, "Cardinal Health").[1] On June 5, 2025, the undersigned held a hearing on Cardinal Health's Motion and issued an order that same day, summarizing the rulings made during the hearing. (Dkt. Nos. 231; 232.) Relevant here, the June 5, 2025 order instructed Plaintiff-Relator UPPI ("UPPI") to provide certain information to the Court by June 12, 2025. (Dkt. No. 323 at 4–6.) Having received the requested information, the undersigned issues this supplemental order to aid the parties as they meet and confer on the sample documents to be submitted for *in camera* review.

   **A.**  **Work Product Doctrine**

   In its Motion to Compel, Cardinal Health disputes UPPI's assertion that documents created several years prior to the 2017 qui tam litigation can be subject to the work product doctrine. (Dkt. No. 204-1 at 23–24.) The work product doctrine protects from discovery any "documents and tangible things that are prepared in anticipation of litigation or for trial by or for [a] party or its

---

[1] By the Order of the Honorable Bruce Howe Hendricks, Cardinal Health's Motion to Compel was referred to the undersigned. (Dkt. No. 207.)

1

representative." Fed. R. Civ. P. 26(b)(3)(A). "The Fourth Circuit and other federal courts of appeals distinguish between documents created in 'anticipation of litigation' and those created in the 'ordinary course of business,' holding that "work is protected when it was created 'because of' the prospect of litigation.'" *Keystone Transportation Sols., LLC v. Nw. Hardwoods, Inc.*, No. 5:18-cv-00039, 2019 WL 8275260, at *1 (W.D. Va. Mar. 28, 2019) (quoting *RLI Ins. Co. v. Conseco, Inc.*, 477 F. Supp. 2d 741, 746–47 (E.D. Va. 2007)). "Work product is created because of litigation if the prospect of litigation is a real likelihood, rather than a mere possibility, and the work would not have been done anyway." *Id*. "The party asserting work-product privilege bears the burden of showing that the work product was prepared in anticipation of litigation." *Id*.

In the June 5, 2025 order, the Court instructed UPPI to submit for *in camera* review one document predating February 2015, identified as work product in the privilege log, which UPPI believes presents the strongest showing that "the prospect of [the 2017 qui tam] litigation was a real likelihood, rather than a mere possibility." (Dkt. No. 232 at 4–5 (citing *Keystone Transportation Sols.*, 2019 WL 8275260, at *1)). In accordance with that order, UPPI has submitted an email between UPPI employees, Michelle Thompson and John Witkowski, dated February 28, 2014. Upon careful review *in camera*, the undersigned finds the email shows no more than Ms. Thompson's speculation about potential misconduct by Caring Hands Health Equipment & Supplies, LLC ("Caring Hands"), one of the former defendants in 2017 the qui tam litigation. The email details Ms. Thompson's reasons for believing Caring Hands may be "abus[ing] the system" and indicates she plans to "keep digging."

This email, consistent with the other record evidence, shows that it was only in February 2015 that the prospect of litigation became a real likelihood, rather than a mere possibility. In his declaration, Mr. Witkowski avers that it was only in February 2015 that UPPI's counsel began

2

working on a potential False Claims Act case. (Dkt. No. 215-1.) His declaration, and the general record, indicate that prior to that point UPPI and its counsel were assessing at most, the possibility of litigation against Cardinal Health and others. (*Id.*)

Based on the foregoing, the Court finds that UPPI has established that documents *created in February 2015 and thereafter* were prepared in anticipation of the 2017 qui tam litigation and only those documents are entitled to work product protection on that basis. *See Keystone Transportation Sols.*, 2019 WL 8275260, at *2 ("Many of these communications show that KTS was contemplating litigation against NW before it learned on February 24 that NW had taken over the lease. Reading KTS's communications together, it is apparent that litigation was a mere possibility prior to February 24, but that after KTS confirmed its suspicions that NW had taken over the lease, its discussions changed from speculating about a possible violation of the nondisclosure agreement to planning for likely litigation against NW. . . . Accordingly, the communications and other documents created before February 24 are not protected by the work-product privilege."); *Prowess, Inc. v. Raysearch Lab'ys AB*, No. WDQ-11-cv-1357, 2013 WL 509021, at *7 (D. Md. Feb. 11, 2013) ("The work product protection only extends to documents created because a specific litigation is anticipated, . . . , and [i]t is not enough . . . that the mere possibility of litigation exists.").

### B. Co-Client Privilege

In its Motion to Compel, Cardinal Health also takes issue with UPPI's assertion of attorney-client privilege over communications that include third-party UPPI members. (Dkt. No. 204-1 at 15.) Attorney-client privilege "affords confidential communications between lawyer and client complete protection from disclosure." *Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998). Because attorney-client privilege "impedes the full and free discovery of the truth," it must be

"narrowly construed." *Id*. Where attorney-client privilege applies, the client holds the privilege but "can waive it either expressly, or through conduct." *Id*. at 384, n.4 (citations omitted). Generally, "voluntary disclosure to a third party waives the privilege." *Id*. (citing *Sheet Metal Workers Int'l Assoc. v. Sweeney*, 29 F.3d 120, 125 (4th Cir. 1994)). This is so because "[s]uch a disclosure vitiates the confidentiality that constitutes the essence of the attorney-client privilege." *Id*.

"A well-recognized exception to this rule is the . . . common interest doctrine." *Fort v. Leonard*, No. 7:05-cv-1028-HFF-WMC, 2007 WL 518593, at *1 (D.S.C. Feb. 13, 2007), *as amended* (Feb. 22, 2007) (citing *In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe 89-129*, 902 F.2d 244, 250 (4th Cir.1990)). "[T]he common interest doctrine applies when two or more parties consult or retain an attorney concerning a legal matter in which they share a common interest. In this context the communications between each of the clients and the attorney are privileged against third parties, and it is unnecessary that there be actual litigation in progress for this privilege to apply." *Hanson v. U.S. Agency for Int'l Dev.,* 372 F.3d 286, 292 (4th Cir. 2004) (internal citations omitted).

Critically, "parties will not be considered to have a 'common interest' where that interest is merely similar or related." *Hamada v. Boeing Co*., No. 2:19-cv-02777-DCN-MGB, 2020 WL 12754236, at *3 (D.S.C. July 17, 2020) (citing *Hunton & Williams v. U.S. Dep't of Justice*, 590 F.3d 272, 284–85 (4th Cir. 2010) ("Although a common interest agreement can be inferred where two parties are clearly collaborating in advance of litigation, mere 'indicia' of joint strategy as of a particular point in time are insufficient to demonstrate that a common interest agreement has been formed."); *Wellin v. Wellin*, 211 F. Supp. 3d 793, 798 (D.S.C. 2016), *order clarified*, No. 2:13-cv-1831-DCN, 2017 WL 3620061 (D.S.C. Aug. 23, 2017) ("[T]he court finds that they possess an identical legal interest in this litigation."); *Duplan Corp. v. Deering Milliken, Inc.,* 397

4

F. Supp. 1146, 1172 (D.S.C. 1975) ("A community of interest exists among different persons or separate corporations where they have an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice. . . . The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial.")).

At the hearing, UPPI conceded that the common interest doctrine does not apply to the communications involving its members that are identified in the privilege log. UPPI clarified that it believes UPPI instead shares a "co-client privilege" with its members. UPPI suggested that, in contrast to the common interest doctrine, this privilege does not require that UPPI share an identical legal interest with its members and cited *Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286 (4th Cir. 2004) in support. In the June 5, 2025 order, the Court instructed UPPI to provide the Court with any relevant case law it believes supports this broader definition of the co-client privilege. (Dkt. No. 232 at 5–6.) In accordance with that order, UPPI has submitted two out-of-circuit district court cases: *Supreme Forest Prods., Inc. v. Kennedy*, 2017 WL 120644, at *2 (D. Conn. Jan. 12, 2017) (distinguishing the co-client privilege and the common interest privilege and holding "[f]or the co-client privilege, it suffices for the clients to have a common interest, not necessarily interests that are identical in all respects") and *Sec. & Exch. Comm'n v. Rayat*, 2023 WL 4706074, at *3, 5 (S.D.N.Y. July 24, 2023) (discussing the scope of the co-client privilege and holding that related entities had common legal interests in ensuring that their conduct was compliant with federal securities laws).

Upon careful review of the parties' briefing and oral arguments, the record, and the applicable law, the Court cannot find any basis for UPPI's broad interpretation of the co-client privilege in this circuit. Although UPPI relies on *Hanson* to support its position, *Hanson* discusses

only the application of the common interest doctrine, and it does not separately identify the "co-client privilege" espoused by UPPI. In *Hanson*, the Fourth Circuit Court of Appeals protected from disclosure a report drafted by an attorney and disclosed to the defendant, finding that while a third party had hired the attorney, the defendant was "clearly a real party in interest in the dispute" on which the report opined. 372 F.3d at 292. The court noted that the defendant and the third-party client "shared a common interest and received common counsel from [the attorney] on the matter." *Id*.

Here, UPPI has not cited any cases in this circuit applying *Hanson* to establish a "co-client privilege" in the manner it seeks. In contrast to the defendant in *Hanson*, UPPI does not appear to assert that it is a "real party in interest" in the specific matters on which it communicated with its members and counsel. Further, courts in this circuit generally require that the "common interest" at issue, regardless of whether it involves co-clients, be an identical legal interest in order for the privilege to apply. *See*, *e.g*., *Hamada*, 2020 WL 12754236, at *4 ("[T]he common interest doctrine is applicable only where the parties to whom the confidential communication was disclosed have a 'fully allied' interest in the legal matter." (quoting Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine*, 275 (5th ed. 2004))); *Flo Pac, LLC v. NuTech, LLC*, No. WDQ-09-cv-510, 2010 WL 5125447, at *11 (D. Md. Dec. 9, 2010) ("For this [common interest] exception [under *Hanson*] to apply, it is 'essential' that the client's and third party's 'legal interests be fully allied.'"); *McAirlaids, Inc. v. Kimberly-Clark Corp*., No. 7:13-cv-193, 2014 WL 12782814, at *2 (W.D. Va. Sept. 26, 2014) ("It is not enough for one entity to have a financial interest in the outcome of the litigation if they have not demonstrated a legal relationship. Rather, for the common interest privilege to apply, the jointly interested entities must show how both entities would be affected legally by the outcome of the litigation."); *Elat v. Ngoubene*, No. PWG-

11-cv-2931, 2013 WL 4478190, at *2 (D. Md. Aug. 16, 2013) ("For the Court to apply this [joint-defense privilege or common interest rule] 'the proponent of the privilege must at least demonstrate that (1) the communicating parties shared an identical legal interest, (2) the communication was made in the course of and in furtherance of the joint legal effort, and (3) the privilege had not been waived.'" (quoting *Glynn v. EDO Corp.*, No. JFM–07-cv-01660, 2010 WL 3294347, at *7 (D. Md. Aug. 20, 2010)); *Neuberger Berman Real Est. Income Fund, Inc. v. Lola Brown Tr. No. 1B*, 230 F.R.D. 398, 416 (D. Md. 2005) (rejecting argument that the "affiliation of the various entities" establishes common legal interests, noting that "unless there is 'common ownership or control,' courts engage in a painstaking analysis to determine whether 'the third party . . . shares an identical, and not merely similar, legal interest as the client with respect to the subject matter of the communication between the client and its attorney.'" (quoting *Roberts v. Carrier Corp.*, 107 F.R.D. 678, 678–88 (N.D. Ind. 1985).

Notably, in *In re Grand Jury Subpoena #£06-1*, the Fourth Circuit Court of Appeals considered the "scope of the joint client or co-client privilege," stating that it is "circumscribed by the 'limited congruence of the clients' interests.'" 274 F. App'x 306, 311 (4th Cir. 2008) (quoting *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 362–63 (3d Cir. 2007)). Here, the court emphasized language from the Third Circuit noting that "*their legal interests must be identical (or nearly so)*." *Id.* (quoting *In re Teleglobe Commc'ns Corp.*, 493 F.3d at 366 (emphasis added in *In re Grand Jury Subpoena #£06-1*)). Based on the foregoing, the Court finds that UPPI must identify an identical legal interest with its members in order to assert that the "co-client privilege" applies to their communications with counsel regarding that interest.

AND IT IS SO ORDERED.

7

June 17, 2025

Charleston, South Carolina

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

8