IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| United States of America, *ex. rel.* | ) | |
| UPPI, LLC, | ) | Civil Action No. 9:22-cv-3770-BHH |
| | ) | |
| Plaintiff-Relator, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Cardinal Health, Inc. *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

      This matter is before the undersigned United States Magistrate Judge upon a Motion to Compel (Dkt. No. 204) filed by Defendants Cardinal Health, Inc.; Cardinal Health 414, LLC; and Cardinal Health 200 LLC (collectively, "Cardinal Health").[1] A hearing was held on June 5, 2025, and that same day, the undersigned issued an Order granting in part, denying in part, and holding in abeyance portions of Cardinal Health's Motion to Compel. (Dkt. No. 232.) Among other things, the undersigned ordered the parties to meet and agree upon a sample of documents for the Court to review *in camera*, specific to each category of entries on UPPI's privilege log deemed problematic by Cardinal Health. (*Id.*) A Supplemental Order was issued on June 17, 2025 "to aid the parties as they meet and confer on the sample documents to be submitted for *in camera* review." (Dkt. No. 235.) On July 29, 2025, the parties submitted the sample documents for *in camera* review. The parties have also submitted extensive briefing on the Motion to Compel (*see* Dkt. Nos. 204; 215; 221; 241; 250; 257; 265), which has been carefully considered by the undersigned.

      On October 20, 2025, the undersigned held another hearing to resolve the portions of Cardinal Health's Motion to Compel that were held in abeyance, including Cardinal Health's

---

[1] By the Order of the Honorable Bruce Howe Hendricks, Cardinal Health's Motion to Compel was referred to the undersigned. (Dkt. No. 207.)

request for fees and expenses. The instant Order summarizes the rulings made during the hearing. As explained further below, the Motion to Compel (Dkt. No. 204) is granted in part and denied in part, and Cardinal Health's request for fees and expenses is denied. The production ordered herein must be produced by UPPI to Cardinal Health by October 29, 2025. Because not all documents within some categories have been found privileged or protected, UPPI will need to review the Court's findings and its privilege log to determine whether any additional documents should be produced in light of the below rulings.

### A. Applicable Law

#### 1. Attorney-Client Privilege

Certain communications between attorneys and clients are protected from disclosure. In the Fourth Circuit, the attorney-client privilege applies where:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Hawkins v. Stables*, 148 F.3d 379, 382−83 (4th Cir. 1998) (citations omitted).

Attorney-client privilege "affords confidential communications between lawyer and client complete protection from disclosure." *Id*. at 383; *see also Mays v. Cabell Cnty. Bd. of Educ*., No. 3:22-cv-00085, 2023 WL 2656760, at *8 (S.D.W. Va. Mar. 27, 2023) ("[T]he privilege shields from discovery communications between a lawyer and client that are confidential and made for the purpose of securing legal advice.") (citing *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982)).

Additionally, courts in this circuit have found that "[a] document need not be authored or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds." *Santrade, Ltd. v. Gen. Elec. Co.*, 150 F.R.D. 539, 545 (E.D.N.C. 1993) (finding attorney-client privilege attached to documents where "the author, addressee, or copy recipient was a lawyer *or* the document includes communications involving corporate officers and agents who possessed the information requested by the attorney or who acted on the legal advice") (emphasis added). "Communications between non-attorney employees regarding 'a request for legal advice' and 'responsive legal advice' are generally treated as privileged because they likely 'reveal the motive of the client in seeking representation, litigation strategy or the specific nature of the services provided, such as researching particular areas of the law;' all matters which 'fall within the privilege.'" *Citynet, LLC on behalf of United States v. Frontier W. Virginia, Inc.*, No. 2:14-cv-15947, 2022 WL 987936, at *1 (S.D.W. Va. Mar. 31, 2022) (quoting *Neuberger Berman Real Est. Income Fund, Inc. v. Lola Brown Tr. No. 1B*, 230 F.R.D. 398, 411 (D. Md. 2005)); *see also In re NC Swine Farm Nuisance Litig.*, No. 5:15-cv-13-BR, 2017 WL 2313470, at *4 (E.D.N.C. May 26, 2017) ("The request for a legal opinion, including the information necessary to secure the opinion, may be a privileged communication when discussed between members of an organization even when the attorney is not included on the communication.").

Because attorney-client privilege "impedes the full and free discovery of the truth," it must be "narrowly construed." *Hawkins*, 148 F.3d at 383. Where attorney-client privilege applies, the client holds the privilege but "can waive it either expressly, or through conduct." *Id.* at 384, n.4 (citations omitted). Generally, "voluntary disclosure to a third party waives the privilege." *Id.* (citing *Sheet Metal Workers Int'l Assoc. v. Sweeney*, 29 F.3d 120, 125 (4th Cir. 1994)); *United States v. Oloyede*, 982 F.2d 133, 141 (4th Cir. 1993); *In re Martin Marietta Corp.*, 856 F.2d 619,

623 (4th Cir. 1988); *In re Grand Jury Proceedings*, 727 F.2d 1352, 1357 (4th Cir. 1984); *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982). This is so because "[s]uch a disclosure vitiates the confidentiality that constitutes the essence of the attorney-client privilege." *Id.*

Courts in this circuit have clarified that when the disclosure to a third party "occur[s] concomitantly with the communication," it "negates the confidentiality element and prevents the communication from ever being deemed confidential." *Flo Pac, LLC v. NuTech, LLC*, No. WDQ-09-cv-510, 2010 WL 5125447, at *7 (D. Md. Dec. 9, 2010) (citing *FEC v. Christian Coalition*, 178 F.R.D. 61, 71 (E.D. Va. 1998)). In other words, "waiver occurs when a privileged communication is disclosed to a third party at a later date." *Id.* "If the third party is present when the communication is made, it is not technically correct to say that the client has 'waived' the privilege because one cannot waive what never existed." *FEC*, 178 F.R.D. at 71.

"A well-recognized exception to this rule is the . . . common interest doctrine." *Fort v. Leonard*, No. 7:05-cv-1028-HFF-WMC, 2007 WL 518593, at *1 (D.S.C. Feb. 13, 2007), *as amended* (Feb. 22, 2007) (citing *In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe 89-129*, 902 F.2d 244, 250 (4th Cir.1990)). "[T]he common interest doctrine applies when two or more parties consult or retain an attorney concerning a legal matter in which they share a common interest. In this context the communications between each of the clients and the attorney are privileged against third parties, and it is unnecessary that there be actual litigation in progress for this privilege to apply." *Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 292 (4th Cir. 2004) (internal citations omitted).

Courts in this circuit generally require that the "common interest" at issue, regardless of whether it involves co-clients, be an identical legal interest in order for the privilege to apply. *See, e.g.*, *Hamada*, 2020 WL 12754236, at *4 ("[T]he common interest doctrine is applicable only

where the parties to whom the confidential communication was disclosed have a 'fully allied' interest in the legal matter." (quoting Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine*, 275 (5th ed. 2004))); *Flo Pac, LLC*, 2010 WL 5125447, at \*11 ("For this [common interest] exception [under *Hanson*] to apply, it is 'essential' that the client's and third party's 'legal interests be fully allied.'"); *McAirlaids, Inc. v. Kimberly-Clark Corp*., No. 7:13-cv-193, 2014 WL 12782814, at \*2 (W.D. Va. Sept. 26, 2014) ("It is not enough for one entity to have a financial interest in the outcome of the litigation if they have not demonstrated a legal relationship. Rather, for the common interest privilege to apply, the jointly interested entities must show how both entities would be affected legally by the outcome of the litigation."); *Elat v. Ngoubene*, No. PWG-11-cv-2931, 2013 WL 4478190, at \*2 (D. Md. Aug. 16, 2013) ("For the Court to apply this [joint-defense privilege or common interest rule] 'the proponent of the privilege must at least demonstrate that (1) the communicating parties shared an identical legal interest, (2) the communication was made in the course of and in furtherance of the joint legal effort, and (3) the privilege had not been waived.'" (quoting *Glynn v. EDO Corp*., No. JFM–07-cv-01660, 2010 WL 3294347, at \*7 (D. Md. Aug. 20, 2010)); *Neuberger Berman Real Est. Income Fund, Inc. v. Lola Brown Tr. No. 1B*, 230 F.R.D. 398, 416 (D. Md. 2005) (rejecting argument that the "affiliation of the various entities" establishes common legal interests, noting that "unless there is 'common ownership or control,' courts engage in a painstaking analysis to determine whether 'the third party . . . shares an identical, and not merely similar, legal interest as the client with respect to the subject matter of the communication between the client and its attorney.'" (quoting *Roberts v. Carrier Corp*., 107 F.R.D. 678, 678–88 (N.D. Ind. 1985).

Notably, in *In re Grand Jury Subpoena #£06-1*, the Fourth Circuit Court of Appeals considered the "scope of the joint client or co-client privilege," stating that it is "circumscribed by

the 'limited congruence of the clients' interests.'" 274 F. App'x 306, 311 (4th Cir. 2008) (quoting *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 362–63 (3d Cir. 2007)). Here, the court emphasized language from the Third Circuit noting that "*their legal interests must be identical (or nearly so)*." *Id.* (quoting *In re Teleglobe Commc'ns Corp.*, 493 F.3d at 366 (emphasis added in *In re Grand Jury Subpoena #06-1*)).

Additionally, "when the [privileged] information is disclosed to a third-party who needs to know the information, and who is the 'functional equivalent of an employee for the corporation,' disclosure does not amount to waiver." *RoyaltyStat, LLC v. IntangibleSpring, Corp*, No. 8:15-cv-03940-PX, 2019 WL 13041260, at *3 (D. Md. Aug. 1, 2019) (quoting *Maxtena, Inc. v. Marks*, No. DKC 11-0945, 2014 WL 4384551, at *20 (D. Md. Sept. 2, 2014)).

To waive attorney-client privilege, "there must first be a 'disclosure of a communication or information covered by the attorney-client privilege . . . .'" *Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, 885 F.3d 271, 276 (4th Cir. 2018) (quoting Fed. R. Evid. 502). When a party voluntarily discloses privileged information, that party "typically" waives attorney-client privilege for that information. *In re Grand Jury 16-3817 (16-4)*, 740 F. App'x 243, 246 (4th Cir. 2018) (citing In *re Martin Marietta Corp.*, 856 F.2d 619, 622–23 (4th Cir. 1988)). "Selective disclosure for tactical purposes waives the attorney-client privilege," *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982), so "[a party] must choose between confidentiality and disclosure. He cannot have both." *In re Grand Jury Subpoena*, 204 F.3d 516, 522 (4th Cir. 2000); *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-MD-2836, 2022 WL 4354620, at *3 (E.D. Va. Aug. 15, 2022). If a party voluntarily discloses a single communication protected by the attorney-client privilege, it waives the privilege for that communication and any other communications covering the same subject

6

matter. *Hawkins v. Stables*, 148 F.3d 379, 384 n.4 (4th Cir. 1998)); *see also Jones*, 696 F.2d at

1072.

      The Court must also consider Federal Rule of Evidence 502, which governs waiver

alongside common-law principles. *United States v. Moazzeni*, 906 F. Supp. 2d 505, 512 (E.D. Va.

2012). Rule 502(a) limits the scope of a waiver of attorney-client privilege. Pursuant to Rule

502(a), a waiver of attorney-client privilege waives the privilege as to other, undisclosed

communications between lawyer and client only if (1) the waiver is intentional, (2) the disclosed

and undisclosed communications concern the same subject matter, and (3) the disclosed and

undisclosed communications should, in fairness, be considered together. Fed. R. Evid. 502(a)(1)-

(3). A voluntary disclosure:

> generally results in a waiver only of the communication or information disclosed;
> a subject matter waiver (of either privilege or work product) is reserved for those
> unusual situations in which fairness requires a further disclosure of related,
> protected information, in order to prevent a selective and misleading presentation
> of evidence to the disadvantage of the adversary.

Fed. R. Evid. 502(a) Advisory Committee's Note to subdiv. (a) (citing *In re United Mine Workers*

*of America Employee Benefit Plans Litig.*, 159 F.R.D. 307, 312 (D.D.C. 1994).) "Thus, subject

matter waiver is limited to situations in which a party intentionally puts protected information into

the litigation in a selective, misleading and unfair manner." *Id.*

### 2.    Work Product Doctrine

      The work product protection is distinct from and broader than attorney-client privilege. *See*

*United States v. Nobles,* 422 U.S. 225, 238, n.11 (1975) (citing *Hickman v. Taylor*, 329 U.S. 495,

508 (1947)). The work product doctrine protects from discovery any "documents and tangible

things that are prepared in anticipation of litigation or for trial by or for [a] party or its

representative." Fed. R. Civ. P. 26(b)(3)(A). "But those materials may be discovered if 'they are

otherwise discoverable under Rule 26(b)(1)' and the party seeking discovery 'shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.'" *In re Grand Jury 2021 Subpoenas*, 87 F.4th at 252 (quoting Fed. R. Civ. P. 26(b)(3)(A)(i)–(ii)). The party invoking this protection bears the burden to show that it applies to each requested document and that it has not been waived. *See Nicholas v. Bituminous Cas. Co.*, 235 F.R.D. 325, 331–32 (N.D. W. Va. 2006).

The Fourth Circuit has long held "that, to be protected, 'the document must be prepared because of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation.'" *In re Grand Jury 2021 Subpoenas*, 87 F.4th at 252 (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co*. 967 F.2d 980, 984 (4th Cir. 1992)). "[M]aterials created in the ordinary course of business or pursuant to regulatory requirements or for other non-litigation purposes are not documents prepared in anticipation of litigation within the meaning of Rule 26(b)(3)." *Nat'l Union Fire Ins. Co.*, 967 F.2d at 984; *see also Goff v. United Rentals (N. Am.), Inc.*, No. 2:16-cv-608, 2017 WL 1179158, at *3 n.3 (E.D. Va. Mar. 28, 2017) ("[E]ven attorney prepared documents can be found to not constitute work product if they were prepared in the ordinary course of business and not in anticipation of litigation."). "Determining the driving force behind the preparation of each requested document is therefore required in resolving" the proponent's claim that the document is protected work product. *Id*.

Once the Court finds that a document was prepared "in anticipation of litigation," Fed. R. Civ. P. 26(b)(3)(A), it must determine whether the documents reflect "opinion" work product or "fact" work product. *Nat'l Union Fire Ins. Co*., 967 F.2d at 985; see Fed. R. Civ. P. 26(b)(3)(B). Opinion work product, "which represents the actual thoughts and impressions of the attorney, . . .

8

. enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *In re Grand Jury Subpoena*, 870 F.3d 312, 316 (4th Cir. 2017) (quotation marks omitted); *see* Fed. R. Civ. P. 26(b)(3)(B). "[F]act work product, which is a transaction of the factual events involved, . . . . is somewhat less protected," and can be discovered if the party seeking discovery meets its burden under Rule 26(b)(3)(A)(i)–(ii). *See In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 174 (4th Cir. 2019) (internal quotation marks omitted).

"[T]he statutory text of Rule 26 does not require that documents be 'prepared by, for, or at the request of [a] lawyer' in order to be protected as work product" and documents created by a party or its representative may constitute work product. *Hempel v. Cydan Dev., Inc*., No. PX-18-cv-3404, 2020 WL 4933634, at *4 (D. Md. Aug. 24, 2020) (finding "the timelines" prepared by "parties to this case . . . . may be withheld as work product even without a showing that they were created at the request of a lawyer"); *see also.In re Camp Lejeune Water Litig*., No. 7:23-cv-897, 2025 WL 1341890, at *3 (E.D.N.C. May 8, 2025) ("A document created by a non-attorney may still be entitled to protection as work product if it was prepared in anticipation of litigation." (quoting *In re NC Swine Farm Nuisance Litig*., No. 5:15-cv-13-BR, 2017 WL 2313470, at *3 (E.D.N.C. May 26, 2017))). Additionally, at least one court in this circuit has indicated that a document created by a third party can constitute work product where it was created "at the direction of [a party] or their representatives because of anticipated litigation." *Id*. (rejecting claim of work product protection where "documents that Plaintiffs claim are work product were created by persons other than Plaintiffs and their representatives" noting, "[a]lthough this fact does not in itself preclude these documents from work product protection, there is no evidence that any of these documents were created at the direction of Plaintiffs or their representatives because of anticipated litigation"). Courts generally find that documents created by a party or its

representative do not constitute opinion work product, unless they reveal the "the fruit of an attorney's mental processes." *Paice, LLC v. Hyundai Motor Co.*, 302 F.R.D. 128, 134 (D. Md. 2014) (finding that documents created by employee of defendant company constitute opinion work product where the documents in question "respond, or at least, relate, to questions posed by defense counsel for the purpose of defending this litigation" and "synthesize and summarize the highly complex operations"); *see also Therapure v. DynPort Vaccine Co.*, No. RDB-19-cv-2092, 2021 WL 7208624, at *4 (D. Md. May 19, 2021) (finding emails between employees of defendant company "constitute opinion work product because [employee] relays the actual thoughts and impressions of [defendant's] inside and outside counsel regarding [defendant's] possible claims and defenses and litigation strategy") (internal quotation marks omitted); *but see Hempel*, 2020 WL 4933634, at *4 ("Because the timelines were prepared by . . . [the non-lawyer plaintiffs], there is no question that the timelines are ordinary work product rather than opinion work product.")

"The attorney-client privilege . . . is intended to promote communication between attorney and client by protecting client confidences, [but] the work-product privilege is a broader protection, designed to balance the needs of the adversary system: promotion of an attorney's preparation in representing a client versus society's general interest in revealing all true and material facts to the resolution of a dispute." *In re Martin Marietta Corp.*, 856 F.2d at 624 (citing *United States v. Nobles,* 422 U.S. 225, 238 (1975)). In addressing the scope of the work product protection, the Fourth Circuit has explicitly stated:

> [S]ince an attorney's work is for his client's advantage, opposing counsel or adverse parties should not gain the use of that work through discovery. The attorney and client can forfeit this advantage, but their actions effecting the forfeiture or waiver must be consistent with a conscious disregard of the advantage that is otherwise protected by the work product rule. Disclosure to a person with an interest common to that of the attorney or the client normally is not inconsistent with an intent to invoke the work product doctrine's protection and would not amount to such a waiver. However, when an attorney freely and voluntarily discloses the contents of

10

otherwise protected work product to someone *with interests adverse to his or those of the client,* knowingly increasing the possibility that an opponent will obtain and use the material, he may be deemed to have waived work product protection.

*In re Doe v. United States,* 662 F.2d 1073, 1081 (4th Cir. 1981) (emphasis added).

### B.     Findings on Privilege and Protection

At the hearing, the Court ruled on the documents submitted for *in camera* review. Before addressing specific documents, the Court first made some general findings. To the extent possible, the Court addressed the documents with the category assigned to it by the parties. However, the rulings were organized in the order most efficient for discussion, and this means that some documents were addressed outside of their identified category. For those documents, regardless of where they were resolved within the 13 categories, the Court considered all of Cardinal Health's applicable arguments.

To make the findings on privilege, the Court carefully reviewed the approximately 93 documents at issue, as well as the additional evidence and discovery documents submitted by the parties under seal. At the hearing, the Court recognized that because of the nature of UPPI's business, many of the documents at issue could be construed as pertaining to both legal and business matters. The Court advised the parties that any finding of attorney-client privilege was made after the Court found the underlying communication was made for the purpose of securing or relaying legal advice. Similarly, any finding of work product protection was made after the Court found that litigation was the driving force behind the preparation of the underlying document.

For the reasons stated at the June 5, 2025 hearing, and in the prior written orders, the Court found that UPPI has established February 2015 as the date when UPPI first began creating documents in anticipation of the 2017 qui tam litigation. The Court did not find convincing

Cardinal Health's argument that UPPI's failure to implement a litigation hold or preservation notice at that time or at any time thereafter renders the work product doctrine inapplicable. Cardinal Health did not cite any authority that compelled such a finding.

Finally, the Court noted that it had carefully considered the distinction between fact work product and opinion work product. Where the Court found documents created by an attorney were protected by the work product doctrine, they constituted opinion work product unless otherwise specified. Specific to those documents protected as fact work product, the Court found Cardinal Health had not established a substantial need for these documents. It does not appear Cardinal Health has yet attempted to obtain the underlying information by way of deposing those who were involved in preparing any of the work product at issue.

> 1.   **Category 1: Attorney-client privilege and work product documents that were not contemporaneously sent to attorneys[2]**

The most recent amended privilege log, the Declarations submitted by UPPI, and the content of the submitted discovery, establish that the following documents were created by a party in anticipation of the November 2017 qui tam litigation and are therefore entitled to work product protection as fact work product under Rule 26(b)(3): Documents **UPPI030484**, **UPPI044700**, **UPPI044701**, **UPPI044702**, and **UPPI055007**. Document **UPPI055007** is also protected by attorney-client privilege because it discusses seeking legal advice from UPPI's counsel. Based on the particulars of this record, and upon *in camera* review, the materials identified as protected within **UPPI032282, UPPI038627, UPPI054815, UPPI032282, UPPI032570**, **UPPI032577,** and **UPPI050810** constitute fact work product. Upon *in camera* review, the emails within Document **UPPI054438** satisfy the requirements of attorney-client privilege, and the redacted material is therefore privileged.

---

[2] Here, the undersigned restates the categories as identified by Cardinal Health in its briefing. (Dkt. No. 241.)

Document **UPPI038636** contains an email chain among Ms. Thompson, Mr. Witkowski, and third-party UPPI member David Bush, dated November 25, 2015. The redacted emails drafted by Ms. Thompson and Mr. Witkowksi were clearly drafted in anticipation of the qui tam litigation and are entitled to protection as fact work product. Mr. Bush's inclusion on these emails do not waive work product protection because as a UPPI member, his interests are not adverse to those of UPPI. However, it does not appear the redacted email drafted by Mr. Bush was written to aid the qui tam litigation, and it is not entitled to protection as fact work product. Accordingly, specific to document **UPPI038636**, only the redacted email drafted by Mr. Bush must be produced.

>   **2.      Category 2: Attorney-client privilege and work product documents with insufficient common interest**

The most recent amended privilege log, the Declarations submitted by UPPI, and the content of the submitted discovery, establish that the materials identified as work product in documents **UPPI05986** and **UPPI25574** were created by a party in anticipation of the November 2017 qui tam litigation and are therefore entitled to work product protection as fact work product under Rule 26(b)(3).

>   **3.      Categories 3, 5, 6, 7: (3) Attorney-client privileged documents for which the co-client privilege asserted does not meet the standard; (5) Attorney-client privilege waived by non-UPPI party; (6) Attorney-client privilege waived by a non-shareholder from a company with a shareholder owner/principal; (7) Attorney-client privilege waived by an affiliate member third party**

As detailed in the June 17, 2025 Order, "UPPI must identify an identical legal interest with its members in order to assert that the 'co-client privilege' applies to their communications with counsel regarding that interest." (Dkt. No. 235 at 3–7.) Upon careful review, for the reasons stated at the instant hearing, UPPI has not established that the redacted communications within the following documents were among co-clients with an identical legal interest: **UPPI035852,**

**UPPI038676, UPPI049171, UPPI049175**, **UPPI049228, UPPI047634, UPPI047791, UPPI048728, UPPI048752, UPPI048764, UPPI049291, UPPI049293, UPPI035841, UPPI047373, UPPI047673, UPPI041363, UPPI048458, UPPI049061, UPPI049254, UPPI049628, UPPI049744,** and **UPPI050119.** Additionally, for the reasons stated at the hearing, the communications within these documents that include third party, Charlie Joyce, are not privileged under attorney-client privilege. Because the communications in these documents included third parties throughout, they were not privileged in the first place, and the issue of subject matter waiver has not been implicated.

UPPI's privilege log also identifies the following documents as protected under the work product doctrine because the communications were drafted in anticipation of specific bid protests pursued by UPPI members: Documents **UPPI31273, UPPI049175, UPPI049171, UPPI035852, UPPI047634, UPPI047791, UPPI048728, UPPI048752, UPPI048764, UPPI049291, UPPI049293, UPPI035841, UPPI047373, UPPI047673, UPPI041363, UPPI048458, UPPI049061, UPPI049254**, and **UPPI049744.** The Fourth Circuit Court of Appeals has clarified that, to be protected under the work product doctrine, "the document must be prepared because of the prospect of litigation when *the preparer* faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." *In re Grand Jury 2021 Subpoenas*, 87 F.4th at 252 (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co*. 967 F.2d 980, 984 (4th Cir. 1992)) (emphasis added). Here, because UPPI does not have any legal stake in, and is not a party to, the bid protests brought by the UPPI members, it is not entitled to protection under the work product doctrine as to documents created in anticipation of those bid protests. UPPI has not provided any case law directly on point, and its reliance on a 2015 decision issued by a district court in the District of Columbia does not compel a different

14

conclusion. The Court has not found any cases *in this circuit* applying the work product doctrine under such extenuated circumstances, and the Court is not willing to do so here given the Fourth Circuit's apparent limitation of the work product doctrine only to a party facing an actual claim or a potential claim in connection to the anticipated litigation.

This same reasoning applies to certain redacted materials within document **UPPI50807**. Specifically, although the March 15, 2017 email from Ms. Thompson to UPPI members was drafted in anticipation of a bid protest, this specific email is not protected under the work product doctrine because UPPI did not have any legal stake in, and was not a party to, that bid protest. And it is not entitled to attorney-client privilege for the reasons already explained. However, Ms. Thompson's August 13, 2024 email to her qui tam counsel constitutes fact work product because it was created in anticipation of the qui tam litigation. It does not meet the requirements of attorney-client privilege because it does not convey confidential information. Accordingly, only the March 15, 2017 email within document **UPPI50807** must be produced.

Two documents within category six deserve further consideration. Documents **UPPI033141** and **UPPI033677** include communications with third parties, which do not meet the requirements of attorney-client privilege for the reasons already explained. Additionally, the materials within those documents that were created in anticipation of a bid protest are not entitled to protection under the work product doctrine. However, these documents also include subsequent emails between UPPI's employees and UPPI's counsel that were created in anticipation of the qui tam litigation.

Document **UPPI033141** includes emails dated March 18, 2015 between Mr. Witkowski and UPPI's counsel, Tenley Carp, that were created in anticipation of the qui tam litigation. These specific communications are entitled to protection as fact work product. They are also privileged

under attorney-client privilege because UPPI and its counsel are communicating for the purpose of securing legal advice for UPPI. The preceding emails, which include a third party and involve separate subject matter, are not privileged and the waiver analysis does not apply. Accordingly, the March 18, 2015 emails between only Mr. Witkowski and Tenley Carp in document **UPPI033141** are protected and the remaining redacted portions of this document must be produced.

Specific to document **UPPI033677**, while the initial email includes only UPPI's counsel and UPPI's employees, this email was then forwarded to third-party UPPI members. For the reasons previously stated, the communications including these UPPI members do not meet the requirements of attorney-client privilege. Additionally, by disclosing the prior email to third parties, UPPI waived the attorney-client privilege as to that email. However, upon careful consideration, the Court does not find that the circumstances here warrant subject matter waiver for any other communications relating to the specific bid protest identified in these emails. The record does not indicate the disclosure to the UPPI members was made for tactical purposes such that fairness principles would require further disclosure of related, protected information. Document **UPPI033677** includes a subsequent December 23, 2016 email between UPPI's employees and UPPI's counsel, in which Mr. Witkowski provides information in anticipation of the qui tam litigation. Based on the particulars of this record, and upon *in camera* review, the Court finds that the December 23, 2016 email is subject to protection as fact work product. This email is also privileged under attorney-client privilege because Mr. Witkowski is communicating with UPPI's counsel for the purpose of securing legal advice for UPPI. Accordingly, only the December 23, 2016 email in document **UPPI03367** is protected and the remaining redacted portions of this document must be produced.

For the reasons stated at the hearing, the Court finds that UPPI has not met its burden to establish that the materials in **UPPI047586** or **UPPI047585** were created in anticipation of the qui tam litigation. To the extent Ms. Thompson's email in document **UPPI047585** was protected by attorney-client privilege, that privilege was waived when it was shared by Mr. Witkowski with a third-party UPPI member, as shown in document **UPPI035841**. However, upon careful consideration, the Court does not find that the circumstances here warrant subject matter waiver for any other communications relating to the specific bid protest identified in these emails. The record does not indicate the disclosure to the UPPI members was made for tactical purposes such that fairness principles would require further disclosure of related, protected information. Documents **UPPI047586** and **UPPI047585** must be produced in their entirety.

### 4.     Category 4: Attorney-client privilege without an attorney

The most recent amended privilege log, the Declarations submitted by UPPI, and the content of the submitted discovery, establish that the redacted materials in the following documents are privileged under attorney-client privilege: **UPPI032594, UPPI036206, UPPI048492, UPPI035838, UPPI037361, UPPI039786**, **UPPI041622**, and **UPPI045468**.

Document **UPPI032859** is included in this category and is described in the privilege log as authored by John Witkowski. It is an outline dated February 17, 2015, titled "Preliminary Outline of UPPI LLC Preparation for Qui Tam Action," and it reflects legal advice from UPPI's counsel in anticipation of the qui tam litigation. However, it is not a communication and therefore does not fall under the attorney-client privilege. Rather, based on the privilege log, and upon *in camera* review, the Court finds this outline constitutes opinion work product because it contains the fruit of UPPI's attorney's mental processes and it does not need to be produced.

### 5.     Category 8: Work product not created by an attorney, not directed by an attorney, and/or not created in anticipation of litigation

The most recent amended privilege log, the Declarations submitted by UPPI, and the content of the submitted discovery, establish that the following documents were created by a party in anticipation of the November 2017 qui tam litigation and are therefore entitled to work product protection as fact work product under Rule 26(b)(3): documents **UPPI036350** and **UPPI033779**.

Document **UPPI043329** is a communication from a UPPI employee to a third party on September 20, 2012 that references a litigation that had already concluded. It does not satisfy the requirements of work product protection, and the Court finds it must be produced. For the reasons stated at the hearing, document **UPPI045735** also does not satisfy the requirements of work product protection, and it must be produced in its entirety.

The remaining documents within this category are identified in the privilege log as protected under the work product doctrine because the documents were drafted in anticipation of specific bid protests pursued by UPPI members: Documents **UPPI031274; UPPI036735; UPPI036739; UPPI041380;** and **UPPI048758.** Here, because UPPI does not have any legal stake in, and is not a party to, the bid protests brought by the UPPI members, it is not entitled to protection under the work product doctrine as to these documents created in anticipation of those bid protests. Accordingly, these documents must be produced in their entirety.

### 6.    Category 9: Work product created by a non-UPPI member third party

Turning to the documents within this category, document **UPPI036907** is an email chain between Mr. Witkowski and UPPI member Karen Sheriff. Out of these three emails dated March 8, 2017, only the email drafted by Mr. Witkowski constitutes work product. In his email, Witkowski is sharing information related to Cardinal Health and the Low-Enriched Uranium conversion of VA facilities, which was a claim in UPPI's original qui tam complaint against Cardinal Health. It appears that the qui tam litigation was the driving force behind this email, and

the Court therefore finds that Mr. Witkowski's email constitutes fact work product. The inclusion of Ms. Sheriff on this email does not waive work product protection because as a UPPI member, Ms. Sheriff's interests are not adverse to those of UPPI. However, the two emails drafted by Ms. Sherriff do not share information that was *directly requested* by a party or counsel in anticipation of litigation, and they do not constitute work product. Accordingly, all of the redacted materials within document **UPPI036907**, except for that drafted by Mr. Witkowski, must be produced.

Document **UPPI036209** is an email chain dated March 18, 2015. The third email is drafted by a UPPI member, Perry Polsinelli, in response to a request directly from UPPI's counsel. This email copies Thompson and another UPPI member. The Court finds that this email is subject to protection as fact work product, as it was drafted at the direct request of UPPI's counsel in anticipation of litigation. While another UPPI member was included on the email, their inclusion on this email correspondence did not waive protection because the members' interests are not adverse to those of UPPI. Additionally, the first email is privileged under attorney-client privilege because Mr. Witkowski is communicating with UPPI's counsel for the purpose of securing legal advice for UPPI.

For the reasons stated at the hearing, the redacted materials within documents **UPPI046648**, **UPPI036425,** and **UPPI037411** are protected as fact work product.

There are several emails sent from UPPI member Allen Townsend to UPPI's employees on November 27, 2018 and January 16, 2019, drafted in response to a request for specific information from UPPI's qui tam counsel. Because these emails were drafted by a UPPI member in anticipation of the qui tam litigation, at the request of UPPI's counsel, the Court finds they are subject to protection as fact work product. This applies to the information drafted by Mr. Townsend and identified as protected in documents **UPPI037323, UPPI037328, UPPI037335**, **UPPI037338,**

19

and **UPPI043861**. Additionally, the redacted email between Mr. Witkowksi and Ms. Thompson in document **UPPI043861** is privileged under attorney-client privilege because it discusses seeking legal advice from UPPI's counsel.

The redacted email from Mr. Townsend found in document **UPPI051044** is dated November 20, 2018, and it was drafted before UPPI's counsel requested any information from Mr. Townsend to aid in the qui tam litigation. Because Mr. Townsend did not draft this email at the request of UPPI's counsel, document **UPPI051044** it is not protected under the work product doctrine.

There are several emails sent among Ms. Thompson and UPPI members, Scott Brower and Brian McVey that are redacted in document **UPPI040953**. Ms. Thompson's February 23, 2015 email to Mr. McVey is requesting information for UPPI's counsel to use in the qui tam litigation and Mr. McVey's February 24, 2015 email to Ms. Thompson responds with the requested information in anticipation of the qui tam litigation. These emails are both protected as fact work product. However, Mr. McVey's February 9, 2015 email to Ms. Thompson was not drafted in response to a request for information in anticipation of litigation, and it does not constitute work product. Likewise, Mr. Brower's February 24, 2015 email was not drafted in response to any direct request from UPPI or its counsel, and it does not constitute work product. Ms. Thompson's February 24, 2015 email sent to both Mr. McVey and Mr. Brower was drafted in anticipation of the qui tam litigation, and therefore is protected as fact work product. The inclusion of UPPI members on this email does not waive work product protection because the members' interests are not adverse to those of UPPI. In sum, Mr. McVey's February 9, 2015 email and Mr. Brower's February 24, 2015 email must be produced. The remaining emails within document **UPPI040953** are protected.

Finally, document **UPPI25374** is identified in the privilege log as protected under the work product doctrine because it was drafted in anticipation of a specific bid protest pursued by a UPPI member. However, because UPPI does not have any legal stake in, and is not a party to, the bid protests brought by the UPPI members, UPPI is not entitled to protection under the work product doctrine as to document **UPPI25374**, and the document must be produced in its entirety.

### 7.     Category 10: Work product waived by a third party

Turning to the documents in this category, document **UPPI041405** contains a redacted email drafted by Ms. Thompson on August 17, 2016 and sent to Thomas Larkin, a third party educator and business counselor for the Georgia Tech Procurement Assistance Center. In her affidavit, Ms. Thompson states that she prepared this email because of the prospect of the qui tam litigation, and the Court finds it is protected as fact work product. Although Mr. Larkin is a third party, given his position as an educator, his inclusion on this email does not waive work product protection because his interest is not adverse to those of UPPI.

Document **UPPI045723** contains two emails. The first email is dated April 21, 2015 from Ms. Thompson to UPPI's counsel and copies Mr. Witkowski and a UPPI member, Melissa Etheridge. It was drafted by Ms. Thompson in anticipation of the qui tam litigation and constitutes fact work product. As a UPPI member, Ms. Etheridge's inclusion on this email does not waive work product protection because her interest as a member is not adverse to those of UPPI. The second email is among UPPI's counsel and UPPI's employees, and its protection does not appear to be disputed by Cardinal Health. Regardless, it is subject to protection as opinion work product as it contains an email from UPPI's legal counsel containing her impressions on the qui tam litigation and seeking information in anticipation of litigation.

The remaining documents within this category are identified in the privilege log as protected under the work product doctrine because the documents were drafted in anticipation of specific bid protests pursued by UPPI members: **UPPI033859, UPPI036861, UPPI036874, UPPI039137,** and **UPPI041402**. Here, because UPPI does not have any legal stake in, and is not a party to, the bid protests brought by the UPPI members, it is not entitled to protection under the work product doctrine as to these documents created in anticipation of those bid protests. Accordingly, these documents must be produced in their entirety.

> **8.** **Categories 11, 12: (11) Work product for which UPPI changed the listed anticipated litigation in the July 7, 2025 privilege log; (12) Documents for which the asserted privilege changed**

The eleventh and twelfth categories identified by Cardinal Health are related. The documents here are those in which UPPI changed either in some portion or entirely the basis of privilege identified in its July 7th privilege log. Cardinal Health questions the legitimacy of these changes and argues that UPPI cannot rely on these late changes to protect the documents at issue. Cardinal Health also asserts that UPPI's changes to the privilege log implicate the issue of subject matter waiver specific to attorney-client privilege. The Court has carefully reviewed the *in camera* evidence submitted by the parties on this issue as well as the parties' arguments. In its supplemental briefing, UPPI has provided a reasonable basis for the changes made in the July 7th privilege log specific to these documents, and Cardinal Health's arguments on this issue are unconvincing.

Document **UPPI036371**, which consists of emails among Ms. Thompson, Mr. Witkowski, and UPPI's counsel on April 20, 2015, is privileged under attorney-client privilege. In these emails, UPPI and its counsel are communicating for the purpose of securing legal advice for UPPI.

The record shows that document **UPPI031641** is an email drafted by Mr. Witkowski to Ms. Thompson, with information and documents compiled for UPPI's counsel to use in the qui tam litigation. It is entitled to protection as fact work product.

Document **UPPI040449** is a memorandum drafted by Ms. Thompson that details a Georgia Procurement Assistance Center program attended by Ms. Thompson on January 22, 2015. UPPI seeks to protect two sentences within this memorandum on the basis of attorney-client privilege. These sentences reference Ms. Thompson's discussions with UPPI's counsel about Caring Hands. However, the privilege log does not state whether Ms. Thompson shared this memorandum with anyone, and it is not otherwise clear who, if anyone, received this memorandum. Because UPPI has not established that this memorandum was confidential, it is not privileged under attorney-client privilege.

Specific to document **UPPI038665**, there are three emails in this email chain dated August 14, 2014 pertaining to a bid protest sought by a UPPI member. While the first two emails include only UPPI's legal counsel and Mr. Witkowski, the emails were then forwarded from Mr. Witkowski to third-party UPPI member Melissa Etheridge. UPPI has not established that it shared an identical legal interest with Ms. Etheridge as to the bid protest at issue in these emails, and the co-client privilege does not apply to the email between Mr. Witkowski and Ms. Etheridge. Additionally, by disclosing the prior emails to a third party, Mr. Witkowski waived the attorney-client privilege as to the remaining emails on this email chain. Thus, the entirety of document **UPPI038665** must be produced to Cardinal Health. However, upon careful consideration, the Court does not find that the circumstances here warrant subject matter waiver for any other communications relating to the specific bid protest identified in these emails. The record does not

indicate the disclosure to Ms. Etheridge was made for tactical purposes such that fairness principles would require further disclosure of related, protected information.

Document **UPPI038667** contains material drafted by UPPI's counsel in anticipation of a bid protest, and UPPI seeks to protect the material under the work product doctrine. Because UPPI does not have any legal stake in, and is not a party to, this bid protest brought by a UPPI member, UPPI cannot protect this document from disclosure under the work product doctrine. Accordingly, this document must be produced in its entirety.

### 9.      Category 13: Clawback documents

The final category identified by Cardinal Health pertains to documents UPPI produced in discovery that UPPI now seeks to clawback based upon a recently asserted privilege or protection. As stated *supra* section A.2, the materials identified by UPPI as protected within **UPPI05986** constitute fact work product. Accordingly, UPPI is entitled to clawback the materials it has now identified as protected in this document.

Document **UPPI07179** contains an email chain among Ms. Thompson, Mr. Witkowski, and UPPI's counsel with emails dating from March 4th through 7th 2015. In these emails, UPPI and its counsel are communicating for the purpose of securing legal advice for UPPI as to certain UPPI members, Cardinal Health, and the qui tam litigation. These redacted emails, which include UPPI's counsel, are privileged under attorney-client privilege. Also, the initial email between Ms. Thompson and Mr. Witkowski, dated March 3, 2015, is entitled to protection as fact work product. The remaining emails in this document show that this email was drafted by Ms. Thompson in anticipation of the qui tam litigation, and it was shared with UPPI's counsel. For these reasons, the Court finds that UPPI is entitled to clawback the materials it has now identified as protected in document **UPPI07179**.

The remaining documents within this category are identified in the privilege log as protected under the work product doctrine because the documents were drafted in anticipation of specific bid protests pursued by UPPI members: **UPPI038819,** and **UPPI037147**. Here, because UPPI does not have any legal stake in, and is not a party to, the bid protests brought by the UPPI members, it is not entitled to protection under the work product doctrine as to these documents created in anticipation of those bid protests. Accordingly, these documents must be produced in their entirety.

In addition to the thirteen categories identified by Cardinal Health, UPPI submitted three additional documents for *in camera* review: documents **UPPI033138, UPPI048926,** and **UPPI045034**. Upon careful review, the Court finds the record substantiates UPPI's assertion in the privilege log that the redacted materials in these documents were created by either a UPPI employee or its counsel in anticipation of the qui tam litigation, and they are entitled to protection as fact work product.

With these findings, the Court GRANTS IN PART AND DENIES IN PART the portion of Cardinal Health's Motion to Compel (Dkt. No. 204) that was held in abeyance. Because not all documents within some categories have been found privileged or protected, UPPI will need to review the Court's findings and its privilege log to determine whether any additional documents should be produced in light of these rulings. **Any production ordered herein must be produced by UPPI to Cardinal Health by October 29, 2025.**

### C.     Cardinal Health's Request for Fees and Expenses

Finally, Cardinal Health requests attorneys fees and expenses pursuant to Rule 37 of the Federal Rules of Civil Procedure. For the reasons stated at the hearing, cost-shifting is not warranted in this matter under the discretion afforded to the Court. *See* Fed. R. Civ. P. 37(a)(5)(C).

Cardinal Health's request for fees and expenses is DENIED, and the parties must bear their own costs associated with this discovery dispute.

IT IS SO ORDERED.

October 20, 2025

Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE